IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

                                                            Case No. 3:12-bk-34034-SHB

TELLICO LAKE PROPERTIES, L.P.

                Debtor

**MEMORANDUM ON MOTION BY TRUSTEE
FOR TURNOVER OF PERSONAL PROPERTY OF THE ESTATE**

**APPEARANCES:**    MAYER & NEWTON
                                 John P. Newton, Jr., Esq.
                                 1111 Northshore Drive
                                 Suite S-570
                                 Knoxville, Tennessee  37919
                                 Attorneys for the Chapter 7 Trustee

                              FORRESTER & VARSALONA
                                 Sal Varsalona, Esq.
                                 Post Office Box 398
                                 Clinton, Tennessee  37717
                                 Attorneys for William J. Wolfenbarger

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Motion by Trustee for Turnover of Personal Property of the Estate (Motion for Turnover) filed by John P. Newton, Jr., Chapter 7 Trustee (Trustee), seeking turnover of a number of antique cars that he alleges were transferred from Michael Ross, a principal owner of Debtor, to William J. Wolfenbarger. Wolfenbarger filed a response to the Motion for Turnover, acknowledging that he has possession of three automobiles sought by the Trustee but arguing that he is a bona fide purchaser of the vehicles and they were never property of Debtor's bankruptcy estate. The issues, as defined by the parties, are as follows:

(1) At the time of the filing of the Chapter 7 petition on October 5, 2012, was the Trustee's interest in the three vehicles in controversy superior to the interest of Wolfenbarger under 11 U.S.C. § 544 of the Code;

(2) Are the three vehicles property of the estate under 11 U.S.C. § 541;

(3) Is Wolfenbarger a bona fide purchaser or did he provide reasonable market value for the three vehicles in controversy;

(4) What was the legal effect, if any, of the Michael Ross Promissory Note and alleged secured claim of Wolfenbarger in the three vehicles; and

(5) If the Trustee's interest is superior to the interest of Wolfenbarger, are the three vehicles property of the estate under 11 U.S.C. § 541 and therefore subject to an order for turnover under 11 U.S.C. § 542?

The evidentiary hearing of this contested matter was held on February 22, 2016, and the record consists of stipulations of undisputed facts submitted by the parties on February 12, 2016; twenty-five stipulated exhibits introduced into evidence; the testimony of six witnesses (Gregory Baker; John P. Newton, Jr.; Sterling P. Owen, IV; Brenda Wolfenbarger; and William

1

Wolfenbarger); and, pursuant to Rule 201 of the Federal Rules of Evidence, all documents of record in this bankruptcy case. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

## I. RELEVANT FACTS

This bankruptcy case was filed through an Involuntary Petition on October 5, 2012, and an Order for Relief was entered on November 13, 2012, with Debtor's consent. The Trustee was duly appointed, and Michael Ross, a limited partner in Debtor and the president of Tellico Communities Inc., Debtor's general partner, was designated to perform all duties imposed on Debtor under the Federal Rules of Bankruptcy Procedure; however, Debtor's statements and schedules, which were unsigned when filed in January 2013, were prepared with information provided by Greg Baker, who acted as CPA for Ross's businesses and was custodian of Debtor's records. [Trial Ex. 6; Doc. 36.] Debtor's statements and schedules were never signed by nor sworn to under penalty of perjury by Ross, who asserted his Fifth Amendment rights at Debtor's meeting of creditors.

Exhibit 2 attached to Debtor's Statement of Financial Affairs stated, *inter alia*, that a 1956 Ford Thunderbird, a 1956 Chevrolet Corvette, and a 1971 Chevrolet Corvette (the Antique Cars) were "[t]ransferred to William Wolfenbarger for settlement of $100,000 note in 2011." [Trial Ex. 6 at p. 18 of 175.] The parties do not dispute that Wolfenbarger, who has been a licensed car dealer by the State of Tennessee since 1975, has had the Antique Cars in his possession since May 31, 2011. On the same date that Ross delivered the Antique Cars to Wolfenbarger, Ross signed a Promissory Note, agreeing to repay to Wolfenbarger $100,000.00, with interest-only monthly payments to begin on July 1, 2011 (the Note). [Trial Ex. 12.] The Note contains handwriting that it is "[s]ecured by 3 automobile titles 56 T.Bird, 56 Corvette, 71 Corvette." [Trial Ex. 12.]

The parties also do not dispute that the Antique Cars were purchased by Ross with Defendant's funds totaling $158,370.00 from Barrett-Jackson Auto Auction along with other automobiles in April 2005 and April 2006 [Coll. Trial Exs. 8, 9; Trial Ex. 18 at pp. 17-18.] Likewise, there is no dispute that the back of each title contains a handwritten notation dated May 31, 2011, signed by Ross and reflecting Wolfenbarger as buyer for a sales price of "re-sale." [Coll. Trial Ex. 4.]

At the time the involuntary petition was filed, Debtor and Ross were also defendants in a civil lawsuit in the United States District Court styled *Stooksbury v. Ross et al.*, Case No. 3:09-cv-00498 (Stooksbury Lawsuit). A judgment in the Stooksbury Lawsuit was entered in March 2012 [Trial Ex. 7], and since June 6, 2012, Sterling P. Owen, IV has served as receiver in that case [Trial Ex. 14], which is currently in the final stages before closure. Pursuant to a July 21, 2015 Order entered in the Stooksbury Lawsuit, the stay of all legal proceedings against receivership assets was lifted as to assets that were determined not to belong to the receivership estate, including the Antique Cars, so that the Trustee could pursue recovery of them for the benefit of the bankruptcy estate. [Trial Ex. 2.]

## II. ANALYSIS

### A. The Antique Cars Are Property of the Estate.

Debtor's bankruptcy estate was created at the commencement of the case and includes "all legal or equitable interests of the debtor in property" as of that date. 11 U.S.C. § 541(a). What is included within § "541(a)(1)'s definition is 'unquestionably broad, and it is well-settled that property of the estate includes every conceivable interest of the debtor held as of the commencement of the bankruptcy case, whether that interest is future, nonpossessory, contingent, speculative [or] derivative.'" *In re Birmingham Cosmetic Surgery, P.L.L.C.*, No. 14-

3

58784, 2005 WL 1404296, at *2 (Bankr. E.D. Mich. Mar. 25, 2015) (quoting *Moyer v. Slotman (In re Slotman)*, Adv. No. 12-80232, 2013 WL 7823003, at *5 (Bankr. W.D. Mich. Dec. 5, 2013 (internal quotations omitted))).

In support of his Motion for Turnover, the Trustee argued that the Antique Cars were property of the estate as evidenced by the fact that Ross purchased the cars with Debtor's funds and Debtor carried the Antique Cars on its accounting records until the time[1] Ross delivered possession of them to Wolfenbarger. The Trustee also argued that because the Antique Cars were never legally transferred to Wolfenbarger under Tennessee law and because he is not noted as either owner or lienholder on the certificates of title, Wolfenbarger holds neither an ownership nor valid security interest in the Antique Cars. In opposition, Wolfenbarger argued that Ross, not Debtor, owned the Antique Cars, so they cannot be property of Debtor's bankruptcy estate. He also argued that Ross validly transferred ownership of the Antique Cars for fair market value to Wolfenbarger, who had possession of both the titles and the Antique Cars at the commencement of the bankruptcy case.

The Court finds that, notwithstanding that the Barrett-Jackson bills of sale show Ross as the buyer [*see* Coll Trial Ex. 8], the Antique Cars are, in fact, property owned by Debtor and are thus property of Debtor's bankruptcy estate. There is no dispute that the Antique Cars were purchased by Ross, who testified at trial that he was involved in Debtor's day-to-day operations, with two checks written by Ross from Debtor's bank account. [Coll. Trial Ex. 9.] Baker, who was Debtor's CPA, testified that only he and Ross had check-signing authority for Debtor's bank account, and Ross testified that he had gone to the auction alone with the intent to purchase

---

[1] In fact, the evidence at trial established that Debtor carried the Antique Cars on its accounting records until October 2011, when Baker prepared Debtor's tax returns and transferred ownership of the Antique Cars to Rarity Management Company effective January 2010, at the direction of Ross, purportedly to partially satisfy a debt owed by Debtor to Rarity Management Company, which was owned at the time by Ross.

4

classic cars.  Ross also testified in his November 5, 2015 deposition that there was no reason he had titled the cars in his name, that they were "an open title, but they were bought in my name." [Trial Ex. 18 at p. 49.]  Although Ross had possession of the titles to the Antique Cars, which he attempted to sign over to Wolfenbarger when he took possession, Ross never registered the titles with the State of Tennessee, nor did he have his name listed on them by the State.

Under Tennessee law, owners of motor vehicles are required to register ownership with the county clerk, as agent for the Tennessee Department of Safety, and must prove ownership through valid documentation or certifications signed under penalty of perjury before the clerk may issue a certificate of title.  *See* Tenn. Code Ann. § 55-3-103.[2]  Additionally, a security interest in a motor vehicle is perfected only through notation on the certificate of title; possession and/or control of a vehicle is insufficient.  *See* Tenn. Code Ann. §§ 47-9-311, 55-3-126.  That Ross's name is listed on the bills of sale, which were completed by Barrett-Jackson at the auto auction, is not determinative in light of the fact that the Antique Cars, unquestionably, were purchased with Debtor's funds by Ross, who was in control of Debtor at the time he purchased them, and he bought them in his own name rather than Debtor's name.

Even more compelling evidence that Debtor is owner of the Antique Cars is found within Debtor's tax returns for 2005 through 2010, which were prepared with information provided by Ross and reflect that Debtor held "vehicles" worth a substantial amount of money as assets. [*See* Coll. Trial Ex. 10.]  The initial entry, for the 2005 taxes prepared by William E. Long, CPA, on October 6, 2006, reflects an investment value of $477,325.00.  The same figure is reflected in the 2006 tax return, prepared by Long on October 11, 2007.  The 2007 tax return, prepared by Garry

---

[2] During cross examination, the Trustee acknowledged that Debtor also failed to register the Antique Cars with the State of Tennessee; however, unlike Ross and Wolfenbarger, Debtor is not a person capable of acting on his or her own.  Instead, Debtor was under the control of Ross, who benefitted by not registering the cars, and Debtor's failure to register the Antique Cars with the State of Tennessee is not determinative as to Debtor's ownership.

5

L. Godfrey, CPA, on October 19, 2008, reflects an ending investment balance for "vehicles" of $551,670.00. The 2008 tax return, prepared by Baker and signed by Ross as "President" on September 15, 2009, reflects the same $551,670.00 figure for "vehicles." The 2009 tax return prepared by Baker and signed by Ross on October 15, 2010, likewise reflects the same $551,670.00 value. That entry disappears, however, in the 2010 tax return, prepared by Baker and signed by Ross on October 31, 2011, five months after Ross gave possession of the Antique Cars to Wolfenbarger.

At trial, Ross testified that it "appeared" from the 2010 tax return that the Antique Cars were "given" to him as a disbursement for some prior year's income, but he did not produce nor does the record contain any documentation to support that contention. Ross acknowledged on cross-examination that there is nothing within any of Debtor's tax returns or within Ross's 2010 or 2011 personal tax returns to indicate that he had received the Antique Cars in lieu of compensation; instead, Ross testified that he was only assuming they had been a distribution to him because they were no longer showing on Debtor's 2010 tax return. He also testified at trial and in his November 5, 2015 deposition that in addition to not registering the Antique Cars with the State of Tennessee, he did not pay any sales taxes to the State on them [Trial Ex. 18 at p. 50-51]; however, he did carry insurance on the cars.

Baker testified that the final tax return prepared for Debtor was the 2010 return, prepared in October 2011, and that it does not include the classic cars because they, along with a number of home sites, were transferred on the books in October 2011 with an effective date of January 2010 from Debtor to Rarity Management Company, which at that time was owned by Ross.[3] Baker explained that the accounting transfer was made to partially satisfy an obligation owed to Rarity Management Company. Baker testified that he was probably made aware of the

---

[3] According to Baker, Rarity Management Company had previously been owned by Debtor.

6

"transfer" of the Antique Cars by Ross in 2011 when he was preparing the 2010 tax return, but there is no paperwork to reflect the "transfer," no payments were received, and he had no documentation or paperwork concerning a sale or transfer of the Antique Cars to Rarity Management Company. He also did not know why the January 2010 date was chosen as the effective date. Baker also testified that he never issued a 1099 to Ross showing any transfer of the Antique Cars as a disbursement or in lieu of compensation, although Debtor had issued Baker a Form W2 for the 1971 Cutlass that was given to Baker in lieu of compensation in 2011.

Wolfenbarger testified at trial that he considered himself a bona fide purchaser of the Antique Cars and that Ross signed them over to him on the original titles, which he likewise possesses. Wolfenbarger also acknowledged that his initial intent in taking possession of the Antique Cars was for Ross to get them back upon payment of the Note. While the Court does not doubt Wolfenbarger's testimony that based on the documentation, he genuinely thought that Ross owned the Antique Cars, with respect to his having been a bona fide purchaser of the Antique Cars, the record proves otherwise.

First, as previously stated, Debtor, not Ross, was the actual owner of the Antique Cars, and Ross's notations on the back of each title purporting to sell them to Wolfenbarger was invalid. Further, Wolfenbarger, who has had the Antique Cars and titles in his possession since 2011, likewise did not register the cars with the State of Tennessee. There is also nothing in the record to reflect that Wolfenbarger gave value for the Antique Cars, as required for him to be a bona fide purchaser.

To the contrary, the record includes the Note dated May 31, 2011, in the amount of $100,000.00 payable to Wolfenbarger from Ross containing a handwritten notation that it was "secured by 3 automobile titles 56 T. Bird, 56 Corvette, and 71 Corvette" and a $100,000.00

7

check dated May 31, 2011, payable to Ross, noting on its face that it was for the Antique Cars. [Coll. Trial Ex. 12.][4] At trial, Ross testified that he borrowed money from Wolfenbarger and used the Antique Cars as collateral. This testimony is consistent with Wolfenbarger's October 28, 2015 deposition testimony, confirmed at trial by Wolfenbarger, that the loan transaction between himself and Ross concerning the Antique Cars was a secured transaction and that Ross needed money,[5] so Wolfenbarger loaned him money, with the intent that Ross would repay the Note and take back possession of the Antique Cars back. [Trial Ex. 15 at pp. 14-15.] At trial, Wolfenbarger testified that the Note has not been repaid and continues to accrue interest, but he did not foreclose on it because he already had possession of the Antique Cars.

Also relevant is the fact that the Antique Cars were listed in Debtor's Statement of Financial Affairs, which was prepared by Baker as custodian of Debtor's records and which shows, according to "information provided from Michael L. Ross," that the Antique Cars were "[t]ransferred to William Wolfenbarger for settlement of $100,000 note in 2011." [Trial Ex. 6 at p. 18 of 175.] By this entry, Debtor's CPA – the person who was most familiar with Debtor's books and records – responded to question 10 that requires a list of "all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of the case." The response thus supports the fact that the Antique Cars, in fact, were Debtor's property. Notwithstanding that the response asserts that, according to Ross, the Antique Cars owned by Debtor were transferred to Wolfenbarger to settle the Note on which only Ross was obligated, Wolfenbarger's testimony at trial was clear that the Note has not been

---

[4] The check's memo line lists four cars, the three at issue here and a 1955 Bel Air; however, the Note has the 1955 Bel Air marked through as being "collateral" for the Note.

[5] Mrs. Wolfenbarger testified at trial that she and her husband had known Ross and his wife for years.

paid and that interest continues to accrue since the last interest payment was made in January 2012.

For these reasons, the Court finds that Ross did not transfer ownership of the Antique Cars from Debtor to Wolfenbarger and that the Antique Cars were still owned by Debtor when the bankruptcy case was filed such that the cars are property of the bankruptcy estate under § 541(a).

### B.  The Trustee Is Entitled to Turnover of the Vehicles.

Because the Antique Cars are property of Debtor's bankruptcy estate and Wolfenbarger did not perfect any lien on the cars under state law, the Court finds that Wolfenbarger holds a mere possessory interest in the Antique Cars that is inferior to the estate's interest and that does not override the Trustee's requirements under 11 U.S.C. § 704(a) to "collect and reduce to money the property of the estate[.]"

Until it is abandoned or the case is closed, a debtor's property remains part of the bankruptcy estate, 11 U.S.C. § 554(c), and any entity in possession or control of property of the estate is required to turn it over to the trustee, 11 U.S.C. § 542(a).  To prevail in his turnover action, the Trustee must prove, by a preponderance of the evidence, "(1) that the property is or was in the possession, custody or control of an entity during the pendency of the case; (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate." *Bailey v. Suhar (In re Bailey*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008).

Each of the foregoing requirements has been satisfied, and the Trustee is entitled to turnover of the Antique Cars from Wolfenbarger.  The parties do not dispute that Wolfenbarger is currently in and has had possession of the Antique Cars since 2011, including the entire time

9

the bankruptcy case has been pending.  Because the Court has found that the Antique Cars are property of the bankruptcy estate, there is nothing within 11 U.S.C. § 363 or the record that prohibits the Trustee from exercising his statutory authority to "use, sell, or lease" the cars for the benefit of the estate.  Furthermore, based on Baker's testimony, the value of classic cars does not depreciate.  As a result, they are worth, at a minimum, the $158,370.00 paid for them and are, thus, worth more than an inconsequential value and benefit to the bankruptcy estate.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that the Antique Cars are property of Debtor's bankruptcy estate, that the Trustee holds an interest superior to the possessory interest held by Wolfenbarger, and that the Trustee is entitled to turnover of the cars.  Wolfenbarger shall be required to turn over possession of the Antique Cars to the Trustee within thirty days.  An Order consistent with this Memorandum will be entered.

FILED:  March 30, 2016

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE